ORIGINAL
FILED

1   Your name: TIMOTHY ANDREW ROPER

2   Address:   1 GARDENERS CLOSE, BRADFORD ON TONE, 18 MAR 26 PM 2: 28

3                 TAUNTON, SOMERSET
                TA4 1HT   UNITED KINDOM

4   Phone Number: 011 44 1823 461 971

5   Fax Number:     NONE

6   E-mail Address: timroper2@gmail.com

7   Pro Se           PLAINTIFF

8

9               **UNITED STATES DISTRICT COURT**

10           **SOUTHERN DISTRICT OF CALIFORNIA**

11

12   TIMOTHY ANDREW ROPER         )   Case Number:
                                    )   18cv00489-WQH-KSC

13             Plaintiff,             )

14       vs.                         )   **FIRST AMMENDED COMPLAINT**

15                                     )   *FOR FRAUD*

16   PHILIP YANNI                   )

17             Defendant.           )

18

19

20

21

22                           **PARTIES**

23       1. Plaintiff.

24   Name:           Timothy Andrew Roper

25   Address:     I Gardeners Close, Bradford on Tone, Taunton, Somerset

26             TA4 1HT   UNITED KINGDOM

27

28

2. Defendant.

Name:          Philip Yanni

Address:       14711 Sunrise Canyon Road, Poway, CA 92064

## JURISDICTION

3. This case belongs in Federal Court under diversity jurisdiction because none of the plaintiffs live in the same state or country as any of the defendants and the amount of damages is more than $75,000.

## VENUE

4. Venue is appropriate in this Court because a substantial part of the events took place in this district, the Defendant lives in this District and the property I am suing about resided in this District.

## OVERVIEW

5. This is a First Amended Complaint.

Defendant advertised a 1971 Porsche 911s for sale on an online car auction site in September 2017, described it amongst other things as **'recently treated to a rotisserie restoration' 'work included a bare metal repaint' 'the bare-metal repaint appears to have been completed to a high-standard' 'and the seller states that the body used was rust-free with solid floors'**. Relying on these and other representations by the defendant and the photographs of the car and its restoration, the plaintiff bid on the car from the UK and won the auction 6 days later with a winning bid of $102,000. However on shipping and arrival of the car to the UK, it was immediately apparent that the car had been involved in a major frontal collision (The Insurance Write Off) resulting in the car being over 10mm

shorter on one side, the off side front wheel almost touching the front fender, the front trunk being distorted and significantly creased, the front bulkhead being distorted and creased and the front underside floorpan and inner footwells being distorted and buckled. The front suspension and shock absorber components were pushed out of alignment, the damage being so great that the car was in effect a salvage write off that had been superficially repaired.   The plaintiff reached out to the defendant for compensation which the defendant refused, leading to this lawsuit.

## STATEMENT OF FACTS

6. The defendant advertised the car in question (The Porsche) on an online auction site called Bring a Trailer (BAT) on 1st September 2017.  BAT use a standard 7 day auction format where sellers post a description of the car along with a selection of photographs showing various elements of the car.  Due to the short auction time it is rarely possible for a potential bidder to appoint a Pre Purchase Investigation (PPI) expert, have the car inspected and receive the results, within the 7 day auction format.  Therefore in BAT auctions vendors are encouraged to be truthful about the car they are selling. BAT Media is a vehicle listing and auction website and not a Broker or Dealer.

7. Amongst other descriptions of the car on BAT by the defendant were the statements **'recently treated to a rotisserie restoration' 'work included a bare metal repaint' 'the bare-metal repaint appears to have been completed to a high-standard' 'the seller states that the body used was rust-free with solid floors'**, **'The car has reportedly been restored to stock configuration...'** and **'The front trunk was fully refinished during the restoration, and contains a spare Fuchs wheel/tire along with the factory tool kit. The fuel tank was removed, refurbished, coated, and re-installed per the seller'**

At no point was any mention made of any accident damage to the car, let alone major accident damage.

8. Plaintiff relied on the BAT descriptions and photographs of the car, the plaintiff bid on the car and was the successful winner of the auction 7 days later on 8th September, paying $102,000 for the car plus $5,000 BAT fees.  Plaintiff paid the defendant in full and organized and paid for the shipping of the car from the defendants address to Southampton Docks in the UK.  The plaintiff subsequently received in the post a folder (The Restoration File) detailing the restoration of the car.

9. The car was picked up from Southampton docks on 8th November by the plaintiff's Porsche specialist mechanics and restoration shop (Williams Crawford) via a flat bed pickup, to be taken to the specialist mechanics workshop for an initial appraisal of what would be required to get the vehicle ready and registered for road use in the UK.  On loading on to the flat bed the driver noted immediately that the front passenger side wheel was a lot closer to the leading edge of the front wheel arch than the wheel and was almost touching the leading edge of the fender/wheel arch.

10. The next day the plaintiff received a phone call from one of the joint proprietors of Williams Crawford stating that there was a major problem with the car and could the plaintiff go to their workshops to discuss the car.

11. The next day the plaintiff attended the workshop where Adrian Crawford, joint proprietor demonstrated on the car and explained to the plaintiff :

a. The VIN stamping in the front trunk was distorted and was stamped in unusual characters.

b. The car had at some stage sustained a huge and significant frontal impact and although attempts had been made to hide this, it was impossible to do so.  The damage was of such severity that it had distorted the actual structure and frame of

1    the car and the car was in effect an insurance write off that had been superficially

2    repaired.

3         c. Due to there being considerable paint overspray on many parts of the car

4    for example the carpets, body parts in the front trunk, body parts inside the interior

5    of the car and on the underside of the car, it was highly likely that the frontal

6    accident had occurred AFTER the documented rotisserie bare metal restoration and

7    re spray of the car.

8         d. The wheel base of the car was over 10mm shorter on one side of the car

9    compared to the opposite side.

10        12. Plaintiff immediately contacted the defendant initially by email on

11   November 13th 2017 and explained his findings via a subsequent telephone

12   conversation on or around 13th or 14th November.

13        13. Defendant denied any knowledge of VIN stamping irregularities or

14   accident damage stating that such magnitude of accident damage would have been

15   picked up during the bare shell restoration (EXHIBITS A&B).  Plaintiff suggested

16   obtaining an independent expert analysis of the car, which plaintiff declined.

17        14. Plaintiff subsequently discovered that the characters of the VIN stamping

18   had been used on some other cars of the same vintage and informed the defendant

19   of this, but reiterated the frontal accident damage.

20        15. There followed a brief email exchange between plaintiff & defendant

21   (EXHIBITS A & B) where defendant admitted that it was possible that the car had

22   received a replacement  front end (colloquially a new front 'clip') but defendant

23   denied any further assistance to the plaintiff.  No mention of the car receiving a

24   replacement 'clip' was made prior to this at any time particularly in the defendants

25   original description on BAT or in the BAT forum or before plaintiff paid fo the

26   car. Plaintiff made 2 requests for information from the defendant specifically

27   requesting copies of the estimates and receipts for the bodywork 'bare metal

28

rotisserie restoration' and the engine building and reassembly of the car, but received no answer from the defendant. These and subsequent attempts to resolve the dispute were met with no reply from the defendant.

16. Plaintiff emailed the defendant an estimate he had obtained from a UK Porsche restoration shop to rectify The Insurance Write Off accident damage, in the sum of £25,564 excluding paint (over $35,000). (EXHIBIT C) Again no reply was received from the defendant.

17. On reading 'The Restoration File' received by the plaintiff AFTER he had paid for the car, plaintiff noted an estimate for another accident repair necessitating $800 (The $800 accident) of work to the front drivers side fender and a new light housing dated 6th September, this date being BEFORE the end of the BAT auction. No mention of this accident damage was mentioned at all by the defendant before the plaintiff purchased the car.

18. Despite further requests no further dialogue from the defendant was received by the plaintiff.

19. Plaintiff requested and has received a written report from his Porsche specialist mechanics and restoration shop, Williams Crawford, on the condition of the car, detailing the extensive accident damage (EXHIBIT D). This report as well as detailing the accident damage, states:

*a. There is no doubt that this 911 has suffered very heavy collision damage to the front. This damage has affected the structure of the car. (the frame).*

*b. Structure. It is entirely possible to to use a hydraulic ram to pull and push the suspension attachment points into their original position. What cannot be hidden so easily is the creases/folds in the sheet metal as detailed above.*

*c. Panel Gaps. As above the car can be stretched and pulled into any position one wants to enable panel gaps to align to a reasonable standard. However the evidence remains.*

*d. In Summary: we are beyond doubt that this car has suffered a significant impact. One of such severity as to render most vehicles as an insurance total loss.   Although of nice appearance from the outside, the structure cannot hide the evidence of impact damage and the paintwork to the damaged area has spread onto various components that were not present when the car was painted during the original restoration.*

*Repairing the damage correctly is likely to be uneconomical and evidence will always remain.*

*The car would have a significantly diminished value.*

*The market for these cars values originality.  A car with correctly repaired but extensive accident damage would be avoided and hence command a fraction of the price of an 'authentic' example.*

*A car with significant accident damage such as this albeit with new outer panels attached would be of very low value.*

*e. Is repair possible?*

*In our view, in practical terms it is not.  The correct way to repair this 911 would have been to remove all damaged sheet metal, but that includes the bulkhead and forward floor section of the passenger compartment.*

*In layman's terms everything from underneath the seats must be cut away and replaced all the way to the front bumper.  From the front bumper to the windscreen must be cut away.  Then the bulkhead (firewall) must be cut away and replaced.*

*This extent of damage would usually require a replacement body shell. However, that too creates a diminished/blighted value and no body shells are available from Porsche''.*

20. There follows this lawsuit.

# CLAIMS

## Ground 1- Fraudulent concealment

**21.** The defendant advertised a car for sale, knowing that it had previously sustained two accidents, the $800 accident and the Insurance Write Off Accident, the latter being so severe as to effectively render the car an insurance write off and he fraudulently concealed both of these accidents from the plaintiff.

**22.** It is inconceivable that the defendant was not aware of the extensive Insurance Write off Accident damage to the car.  He was definitely aware of the $800 accident as the repair as the car was in his possession and use and the repair was effected during the BAT auction.

**23.** The defendant, Philip Yanni, is Executive board member of and works closely with the Riverside International Automotive Museum (RIAM) which is now closed and is in the process of selling off part of its comprehensive collection of Maserati motorcars.  Mr Yanni is currently listed on the RIAM website as the point of contact for anyone with queries about RIAM.  Mr Yanni is also Southern California Maserati Club President and Managing Director.  Mr Yanni is also CEO of a company called Atlantique Events, a company that according to its website claims: **'Atlantique Events is an elite concierge service that offers total management of the unique needs of our clients in the automotive industry. We are on location, organizing your visit from beginning to end, making sure your weekend is pleasurable and successful. From setting up exclusive tours, to having your own personal industry expert accompanying you to the auctions'.** There are links on the Atlantique website to the RIAM Maserati sale, various classic car auctions and a Maserati rally. Mr Yanni told the defendant in a telephone conversation that he had a large collection of classic cars and that he was 'thinning out' his collection.  The username that the defendant used on the BAT listing was 'MaseratiSD'.

1   24. A co director of RIAM is Bill Losee who was also the chief mechanic

2   for RIAM and who has now set up his own car shop called Euro Tech Performance

3   in California.   It was by Mr Losee at this shop that Mr Yanni had the car in

4   question stripped down and then built back up again after the body had been totally

5   rotisserie restored at Bishop Custom Cars, again in California.

6   25. The defendant has many years experience in the classic car industry and

7   is actively involved in it in buying and selling cars. Since selling the car in

8   question on BAT on 8th September 2017, he has also sold, on BAT, a 25 years

9   owned 1987 Shelby Lancer on 17th October 2017 and a 1970 Fiat Dino 2400

10  Coupe on 2ND January 2018.  He also purchased via BAT a 1997 Ferrari 456 GTA

11  on 7th May 2016.  He is also involved in selling off selected Maseratis by his

12  involvement with RIAM.

13  26. There can be only two scenarios of when the car in question suffered its

14  catastrophic Insurance Write Off frontal collision damage, either before the

15  restoration or afterwards. In either scenario, Mr Yanni must have been aware of it.

16  27. If it was before, then it follows that either Bishop Custom Cars of

17  California who carried out the alleged bare shell rotisserie restoration of the body

18  must have discovered at least some evidence of this collision damage to the car

19  when they stripped it right down to a bare metal shell on a rotisserie and re sprayed

20  it, and/or Bill Losee at Euro Tech Performance must surely have found some

21  evidence of the serious accident damage when he initially totally stripped the car

22  down and then rebuilt it from the bare shell up, bearing in mind that Bill Losee was

23  a hugely experienced mechanic with classic cars and was previously the Chief

24  Mechanic at RIAM.  Had they found any such evidence of such serious collision

25  damage, then they would surely have informed the defendant of this and it would

26  be inconceivable that he was not made aware of it.   The plaintiff's Porsche

27  mechanics at Williams Crawford immediately noticed that the wheel base of the

28

car was 10mm shorter on one side on picking the car up from Southampton docks and discovered the accident damage immediately upon opening the front trunk lid within minutes of it appearing back in their UK workshop the same day from Southampton docks.  Defendant had previously stated in point 7. That the front trunk was fully refinished and that he himself had removed and replaced the fuel tank.  It is particularly in this very area where the inner wings and front bulkhead are buckled and distorted and where due to the extent of this damage an inner compartment ('the smugglers box') was so damaged that the frame of the car can be seen to be buckled and the compartment lid does not even close properly.  The defendant must have noticed this damage.

28. If on the other hand the car suffered the Insurance Write Off collision damage after the bare metal restoration, then it must have occurred during the defendant's ownership, so again he would have been well aware of it.

29. Either way, it is inconceivable that with his considerable previous and ongoing experience and knowledge in classic cars the defendant had absolutely no knowledge or inkling of the accident damage and that he MUST have known about the accident damage. Defendant owned the car for 3 years, yet the damage was discovered within hours of the car having a cursory inspection in the UK.  The defendant knew about the $800 accident damage as it occurred during his possession of the car and during the BAT auction.

30. On 29th January 2018 the defendant phoned Bishop Custom Cars and had a conversation about the 1971 Porsche with the proprietor, Mr Eric Bishop.  Mr Bishop recalled the car well and stated that he himself carried out the works to the body shell and that he had the shell in his workshop for several months.  He stated that he had to replace the front floor pan because the original was rusted out and

that he also had to replace the front cross member due to rust.  He further stated that he had to replace all of the front bulkhead ''from the gas tank forward to the windscreen due to rust''.  And yet the defendant described the car in his listing on BAT as *'The body was rust free with solid floors'*.  Plaintiff also stated in his email to defendant (EXHIBIT B) '' *As for the pan, all I can say is the car was completely apart, we looked closely at the pan and found no rust or any reason to replace it''*.

This is Fraud by Concealment.  When the plaintiff informed Mr Bishop of the extensive accident damage that his mechanics had discovered, Mr Bishop stated that *'**the shell of the car was perfect when it left his workshop, it was concours quality'***

This fact, backed up by Williams Crawford stating that in their professional opinion, the car had suffered the frontal accident damage after the restoration, would strongly indicate that the defendant had a significant accident in the car, **after** its restoration, and that he had this cheaply hidden/repaired and sold the car on omitting to mention this material fact.  The proper place to establish the truth of this matter is in a Court of Law through the Discovery process and by obtaining copies of the restoration estimates and receipts and evidence from, Eric Bishop and Bill Losee under oath.

It should also be noted that the defendant has refused to provide the plaintiff with any paperwork from Bishop Custom Cars or Euro Tech Performance that would detail the condition of the car when preparing estimates for its restoration work and the resultant receipts detailing the work that was necessary and was subsequently

carried out on the car. This paperwork would prove conclusively whether the defendant was aware of the rusty condition of the car or its prior accident damage.

31. Plaintiff therefore states for the reasons given in points 20. to 30. above, that the defendant must have known that the car he sold had suffered a significant frontal impact and sustained extensive damage, sufficient to render the car an Insurance Write Off or at the very least suspected this and that this damage was a material fact that significantly affected not only the car's financial worth but also its desirability and saleability (EXHIBIT D). It is incontrovertible that the plaintiff knew of the $800 accident damage that happened during the auction but also concealed this fact from the plaintiff who relied on the BAT description of the car.

32. The defendant was under a duty to disclose this material fact to the plaintiff in his advertising of the car via BAT because he knew that potential purchasers would rely on his description of the car in his BAT listing. It is a material fact because the damage means that the car would only be purchased as spares or as a 'hack' run-about with a value massively lower than the defendant obtained in the BAT auction.

33. However the defendant intentionally concealed or suppressed the fact of the two accidents with the intent of defrauding the plaintiff, not only in his BAT description of the car, but also subsequent to the plaintiff purchasing the car in good faith, and that he fraudulently denied any prior knowledge of the accident damage to the car (EXHIBIT A&B) and further sought to frustrate the plaintiff finding out the truth about the car by refusing to produce paper copies of the estimates and receipts for the car's restoration by Bishop Custom Cars and Euro Tech Performance. Defendant concealed the fact that he thought the car may have received a 'new front clip' until after the plaintiff had purchased the car and pointed out the accident damage. The defendant knew that if he correctly described

the car as having suffered two accidents, one an Insurance Write Off, that he would struggle to sell the car at all, other than for a vastly reduced price.

34. If the defendant genuinely had no prior knowledge of the accident damage and sold the car in good faith then why did he subsequently refuse to engage with the plaintiff and reach a settlement amicably and force the plaintiff into mounting this lawsuit from the UK? Why did the defendant reveal that the car has possibly had a new front 'clip' only after the auction had ended and when the plaintiff had pushed him on the issue of the car having suffered extensive frontal accident damage?

35. Knowledge of the accident damage to the car was not available to the plaintiff, all he had to rely on was the defendants representations made on the BAT listing which omitted to make any mention of this. The defendant, was an experienced buyer and seller of classic cars and through his involvement with the Riverside International Automotive Museum at a senior level and his involvement with the Southern Californian Maserati Club at a senior level, knew full well that if he mentioned this accident damage on the BAT listing that he would receive extremely low bids on the car, if any, so he sought to fraudulently suppress it and intentionally conceal it, whereas the defendant had a duty to disclose this material fact.

36. The car has suffered at least 2 accidents: one during the auction with the $800 repair estimate and the extensive frontal impact rendering the car an insurance write off. Had the plaintiff been aware of either of the accidents causing this damage before bidding, he would not have bid on the car. Even if the defendant had noted just the $800 accident repair carried out during the auction, this would have been enough to deter the plaintiff from bidding, but the defendant fraudulently concealed both this repair and the extensive frontal impact Insurance Write Off damage from the plaintiff.

37.   At no time did the plaintiff set out to buy or want a car that had suffered irreparable accident damage.  Rather he wanted a genuine rust free car to keep as an investment to cherish and drive and paid a lot of money for the car based on the plaintiff's representations.

38. Reasonable Reliance:

a. The damage from the two accidents was not readily apparent to the plaintiff particularly as the defendant had gone to great lengths to conceal this in having the frame of the car stretched so that the panel gaps looked acceptable and then having the car re-sprayed in a fresh coat of paint.  Plaintiff contracted to buy a restored 1971 Porsche 911s and not an Insurance Write Off, something entirely different and for which a separate and specialist market exists.

b. Due to the time frame of the auction and also the plaintiff residing in the UK, he was unable to organize a Pre Purchase Inspection and even if he could, doubted that he would be able to obtain a truly independent view of the car from a PPI company based locally to Mr Yanni in California.  Plaintiff has also had 3 major spinal operations in the past 18 months and was physically incapable of flying out to see the car. The reason that the plaintiff was interested in purchasing the car in the first place was that not only did the BAT description show a total strip down to a bare shell and a rebuild by the RIAM chief mechanic but also that Mr Yanni checked out as also a senior RIAM board member, president of SC Maserati club and CEO of the company Atalantique Events, so all these facts taken together, the plaintiff  felt he could reasonably trust and rely on the defendant as a reliable person and his description of the car and that the plaintiff had no reason not to. Therefore it didn't even enter plaintiff's mind that defendant, given his standing within the classic car world and reputation, would conceal such material facts about the true nature of the car and attempt to palm off on the defendant, a car that

was really an insurance write off and had also suffered another accident during the actual BAT auction.

39. As a result of the concealment/suppression/omission of these material facts that the car has in effect been rendered an insurance write off by its extensive accident damage (EXHIBIT D) the plaintiff has sustained significant damages:

a. Financial damages of the purchase price paid for the car $102,000 yet the car being in effect an Insurance Write Off and only worth a fraction of this and only being worth a value as a 'parting out car' being worth perhaps $20,000, BAT fees of $5,000, shipping charges to pick up the car from the defendant, shipping insurance & shipping costs to the UK & shipping/handling costs UK side & VAT tax $6,000, pick up from Southampton docks by William Crawford & taken to their premises in Plymouth & costs of inspection & storage & producing a report (EXHIBIT D) $9.000. A total of $122,000.

b. The loss of use of the above $122,00 while the funds are tied up in a worthless insurance write off car, say $20,000

c. The mental strain and distress and time taken in trying to reach an amicable settlement with the defendant and then being forced into mounting this lawsuit.

d. The ongoing costs of this lawsuit.

40. Allegations of fraud must meet the heightened pleading standards of Rule 9(b), which requires "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007). Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a

false representation claim. Another judge in this district has recognized that a fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim. *See, e.g., Washington v. Baenziger,* 673 F.Supp. 1478, 1482 (N.D.Cal.1987) (Weigel, J.) ("Where the fraud consists of omissions on the part of the defendants, the plaintiff may find alternative ways to plead the particular circumstances of the fraud. [F]or example, a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act.") (internal citations and quotations omitted); *see also David K Lindemuth Co. v. Shannon Financial Corp.,* 637 F.Supp. 991, 995 (N.D.Cal.1986) (Weigel, J.). Accordingly, plaintiffs' fraud by omission claim will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct.

The elements of fraud in California are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal.4th 979, 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004).

## COUNT 2- FAUDULENT MISREPRESENTATION

41. Defendant represented the donor car for the restoration as being a sound rust free car. As previously detailed the defendant variously represented the car as *'the*

*body used was rust free with solid floors'* , *'the car has reportedly been restored to stock configuration...', 'As for the pan, all I can say is the car was completely apart, we looked closely at the pan and found no rust or any reason to replace it'.* These statements are positive affirmations by the defendant as to the condition of the car which the plaintiff relied upon and which directly led to the plaintiff subsequently purchasing what he was led to believe was a rust free genuine car for a commensurate price of $102,000 plus auction fees..

42. However these facts are contradicted by Eric Bishop of Bishop Custom Cars, who stripped the paint off the car to a bare metal shell and repaired it and re sprayed it, saying that he repaired significant areas of rust and replaced major panels.  The front pan of the car was subsequently found to be buckled in the front wheel wells from the massive frontal damage, whereas Eric Bishop specifically stated that he had replaced this part of the car due to rust.

43. The claim that *'the car has reportedly been restored to stock configuration...'* cannot be true because the car never left the factory with the wheel base being over 10mm shorter on one side than the other or with the suspension geometry being out of alignment or with the many other significant accident damages.  Defendant's statement that '*I imagine it would be possible that a new front clip was attached at some point.*' see (EXHIBIT B) is in contrast to

his previous the assertions that *'the car has reportedly been restored to stock configuration...'* and his previous assertion that *'the body used was rust free with solid floors'*.

44. The defendant set out to defraud potential buyers by using these statements because with his experience in classic cars he knew full well that that if he portrayed the original car as rust free he would gain a much higher price for the car as the implication would be that the original donor car was sound.

45. Plaintiff, being in the UK, reasonably relied on these representations. The pictures posted on BAT of the car show no evidence of this previous rust damage, the cutting out of the rusty areas, replacing with new panels, the possible replacement front clip and res praying has very effectively hidden this damage. The only way to discover this damage would be to strip the paint off the car to inspect the panels beneath the paint.  At no time did the plaintiff indicate he would be prepared to buy a rusty repaired car, to the contrary, he thought he was buying a sound car, the result of using a sound donor car.

46. The plaintiff has suffered significant damages due to this fraudulent misrepresentation as previously detailed in point 39.

**COUNT 3-BREACH OF EXPRESS WARRANTIES**

**47.** (1) California Uniform Commercial Code section 2313 provides, inter alia, that express warranties are created by (1) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain, and (2) any description of the goods which is made part of the basis of the bargain. Formal words such as "warranty" or "guarantee" are not required to make a warranty, but the seller's affirmation of the value of the goods or an expression of opinion or commendation of the goods does not create an express warranty.

48. The statements made by the defendant in point 41. above were made in writing  and not mere oral sales puffery. They are very specific statements made as to the condition of the original donor car and as such constitute express warranties. They formed part of the basis of the bargain between defendant and plaintiff because the defendant saw fit to specifically state that the donor car was rust free and with solid floors, knowing that this would encourage a potential buyer to have confidence in the soundness of the donor car and to provide reassurance that the donor car was not a rust bucket and the bare metal restoration was not effected to hide what was a rust bucket.  Similarly the plaintiff believed this written representation that a sound donor car was used and that the restoration was not carried out to hide a rust bucket, but rather to further cosmetically improve an already solid car.

49. Defendant has breached these express warranties because Eric Bishop, the restorer of the car, has stated in a telephone with the plaintiff that he had to repair several rusty area of the car, even to the extent of having to replace rusty panels.

50. As a result of this breach of the defendants previous written express warranties the plaintiff has suffered damages as outlined previously in point 39.

## DEMMAND FOR RELIEF

51. **COUNT 1 – FRAUD BY CONCEALMENT**

Plaintiff demands that the defendant take back the car at his own cost and make the plaintiff whole again by refunding the purchase price and associated costs detailed in point 39. above by paying compensatory damages of $142,000.

Plaintiff also requests further Punitive damages of 3 times the compensatory damages of $142,000.  The defendant is a high profile operator in the Californian classic car industry and is a senior member of several institutions within it.  He has started several software companies and has made millions of dollars from them and travels the world on business.  He should know better than to try to palm off an accident damaged car, an insurance write off, on to an unsuspecting and genuine buyer who purchased the car in good faith and who relied on the defendant's

representation of the car.  The defendant should be made a public example of due to his conduct and due to his high status standing in the classic car industry, his high standing in the software industry and yet his underhand and shoddy behaviour in this matter.

52.    **COUNT 2 - FRAUDULENT MISREPRESENTATION**

Plaintiff demands that the defendant take back the car at his own cost and make the plaintiff whole again by refunding the purchase price and associated costs detailed in point 39. above by paying compensatory damages of $142,000. Plus Punitive damages of 3 times compensatory damages.

53.    **COUNT 3 - BREACH OF EXPRESS WARRANTY**

Plaintiff demands that the defendant take back the car at his own cost and make the plaintiff whole again by refunding the purchase price and associated costs detailed in point 39. above by paying compensatory damages of $142,000.

**ADMINISTRATIVE POINTS**

54. The plaintiff resides in the United Kingdom and therefore there are several significant logistical obstacles in mounting this lawsuit in Southern California, although none are insurmountable.  The plaintiff begs the Courts forbearance on the following issues:

a. The post can take up to 10 days between the UK and San Diego introducing a considerable delay in the plaintiff receiving papers from the Court and the defendant and in the plaintiff formulating a reply and posting that reply back to the Court and the defendant in time to comply with Court deadlines. Therefore the plaintiff respectfully requests that initially the plaintiff be allowed a suitably extended timeframe to be able to comply with Court deadlines and that after the Clerk to the Court has received the complaint on paper and assigned the complaint a case number, that the plaintiff be allowed to file all further motions, replies etc with the Court via the CM/ECF system.  In the interim the plaintiff requests that from now on, he be served by email by the Court and defendant.

b. The plaintiff has also suffered 3 multi level lumbar spine surgery operations within the last year including a failed surgery and a rectification.  He respectfully asks the Court due to this and the distances between the two countries that he be allowed to participate in any conferences ordered by the court via telephone and in any depositions via telephone or video conferencing..

c, The plaintiff requests that the trial be by Judge and not Jury.

55. Plaintiff requests permission to amend this complaint in conformance with evidence subsequently obtained at Discovery, in particular the missing paperwork that the defendant refuses to release to the plaintiff and depositions from the 'bare shell' restorer, Eric Bishop, and the car's subsequent assembler, Bill Losee,

56. In an effort to simplify and expedite this law suit the plaintiff has not added Eric Bishop and Bill Losee as interested parties to this action, but plaintiff requests the right to subsequently add them, if he cannot obtain the required discovery and evidence from them voluntarily or via subpoena.

Dated: 26TH MARCH 2018

Signature:

Print name: TIMOTHY ANDREW ROPER

VIA FAX

TIMOTHY ANDREW ROPER v. PHILIP YANNI

# EXHIBITS

**INDEX OF EXHIBITS**                                                **Page**

**EXHIBIT A – email between plaintiff & defendant**          **1 - 3**

**EXHIBIT B – email between plaintiff & defendant**           **4**

**EXHIBIT C – Estimate of repair**                                   **5-6**

**EXHIBIT D – Report on car by Williams Crawford**       **7 - 10**

3/1/2018                                    Gmail - Re: Fwd: Porsche sold on BAT

 Gmail     *EXHIBIT A*
                               *PAGE 1 OF 10*                    Tim Roper <timroper2@gmail.com>

## Re: Fwd: Porsche sold on BAT
1 message

**Philip Yanni** <mna.largeman@gmail.com>                      15 November 2017 at 06:02
To: Tim Roper <timroper2@gmail.com>

Tim,

Thank you for the update on the VIN number verification. I've been very concerned and confused about that, since I did sell you, and always thought I owned, a 911S. I racked my brain trying to figure out how that could have been wrong and, fortunately, it was much ado about nothing.

But having cleared up the identity of the 911S, I do think that is the end of any responsibility I may have.

I never had any knowledge of the accident history of the car, and since I had it completely restored, I never saw any significance to it. I reviewed my Bring a Trailer listing very carefully, and I saw no mention at all, or anything that would even serve as any sort of suggestion regarding any accident history, which is consistent with my knowledge.

All I can say is that I spent an insane amount of money on the restoration. The car was stripped and the restoration shop said nothing at all about any front end damage that needed further repair. If they had, I would have directed the repair without hesitation -- that deep into a restoration, why would I not fix everything? It may be that the restoration shop missed this damage, or perhaps saw it and did not think further repairs were necessary. If that is an error, it is theirs, not mine.

And, to be frank with you, I have doubts about the existence of the damage, especially at the 10 mm magnitude you report. The fit and finish of the car is exceptional, and I received numerous comments to that effect at the RM Auction and at other venues. If the car is tweaked to the tune of 10 mm, how could the body panels fit and align so well? It also drives exceptionally well, and I doubt it would if it were bent that badly. I cannot help but wonder if the 10 mm problem is similar to the VIN number "problem," but that is for you to decide. All I can say is, before you spend a lot of money on repairs, make sure there is a problem that requires correction.

Best Regards,
Philip Yanni


On 11/14/2017 8:17 AM, Tim Roper wrote:

     Philip

     Please see the following in case you didn't receive this originally.

     Tim


     ---------- Forwarded message ----------
     From: **Tim Roper** <timroper2@gmail.com>
     Date: 14 November 2017 at 13:43
     Subject: Re: Porsche sold on BAT
     To: Philip Yanni <mna.largeman@gmail.com>


     Hi Philip

     I have just had a long conversation with Adrian Crawford from Williams Crawford Porsche, who are currently holding the car and have some good news.

     Having checked various sources, Adrian now thinks that the vin stamping in the front trunk next to the smugglers box is genuine. We are removing the knee rail pad to read the coded production number stamped there and when we have this we will contact Porsche archives and ask them whether the production number matches the vin number. They will only answer yes or no to this question I.E they will will not tell you what the correct original vin number was for a supplied production number or what the correct original production number was for a supplied vin number. Only a yes or no on whether they both match, this is to prevent fraud.

EXHIBIT A

PAGE 2 OF 10

Gmail - Re: Fwd: Porsche sold on BAT

The bad news is that on further investigation the car has definitely had a massive frontal accident and I will forward an email from Adrain with a series of photos showing the crease inside the smugglers box and also showing the creased floor plan, inner wing area and sill. The crease runs down both inner wings. On measurement the car is 10mm shorter on the passenger side (the side that took most of the impact) and the front wheel on this side is almost touching the wheel arch. However, all this is repairable and I have asked Adrian for a cost to put the car on a jig and properly repair this accident damage.

You will notice in the photos how there are various spots of yellow overspray paint on the underside of the floor pan, over the black underseal which is very strange for a bare shell respray as the yellow paint would have been applied before the black underseal. There is also considerable yellow overspray all around the cutout in the smugglers box, including on the carpets.

Please let me know what you think.

Kind Regards

Tim

On 14 November 2017 at 07:42, Tim Roper <timroper2@gmail.com> wrote:
Hi Philip

Paul Stephens may be a good garage to use to perform the independent inspection as you will see on his website that he has currently has several early 1970 's' cars in stock and for sale. Perhaps if you want to come over he could compare your car with those?

I sent you his link previously but here it is again;

https://www.paul-stephens.com/prestige-cars-for-sale/

Kind Regards

Tim

---------- Forwarded message ----------
From: **Tim Roper** <timroper2@gmail.com>
Date: 13 November 2017 at 21:51
Subject: Re: Porsche sold on BAT
To: Philip Yanni <mna.largeman@gmail.com>

Phillip

The garage who picked the car up from Southampton Docks and who gave me the report today were Williams Crawford. The guy there is Adrian Crawford who has been involved with early aircooled since he was 20 years old.

http://www.williamscrawford.co.uk/

Other acknowledged early air cooled experts here in the UK are

https://www.paul-stephens.com/prestige-cars-for-sale/

http://www.gmundcars.com/

http://www.historika.co.uk/

https://rpmtechnik.co.uk/

I don't know when you are next at your Reading office here in the UK but we could maybe meet up at a Porsche expert of your choice and you could see the problem areas on the car.

Kind Regards

3/1/2018

Tim

*EXHIBIT A*
*PAGE 3 OF 10*

Gmail - Re: Fwd: Porsche sold on BAT

On 13 November 2017 at 20:42, Philip Yanni <mna.largeman@gmail.com> wrote:
Tim,

What's up? I'm on the road but can be reached at 707.666.3477

Philip Yanni

On November 13, 2017 9:15:38 AM Tim Roper <timroper2@gmail.com> wrote:

Philip

I have just got back from my Porsche specialist who picked the car up from Southampton docks last week and who has now performed an initial inspection of the car.

We need to have a chat, I suggest in the first instance by telephone.

Could you let me have your phone number and a suitable time for me to call you please?

Yours Sincerely

Tim Roper

3/1/2018                                          Gmail - Re: Porsche sold on BAT

M Gmail        EXHIBIT B              Tim Roper <timroper2@gmail.com>
               PAGE 4 OF 10

## Re: Porsche sold on BAT
1 message

**Philip Yanni** <mna.largeman@gmail.com>                    14 November 2017 at 14:06
To: Tim Roper <timroper2@gmail.com>

Tim,

As you can tell I'm totally shocked.  None of this makes any sense to me.

I appreciate your people's credentials. You didn't mention any problems with the VIN plate on the windshield post, and
that number corresponds with the Certificate of Authenticity. so a real 911S has to exist somewhere in here.

I imagine it would be possible that a new front clip was attached at some point. You talked to the previous owner and
he never mentioned any accidents. The car was stripped down and repainted and during that process neither I nor
the restoration shop noticed any welding or anything else that would suggest such major body work. Also during that
time, numerous Porsche experts looked at it and nobody every mentioned anything about the VIN number stamped
under the hood looking funny.  Same at RM, I would think that if it was re-stamped the Porsche expert at RM that
reviewed the car would have said something.

I'm not trying to shirk any responsibility or concern here, just trying to express my confusion. I've never had any
reason to doubt this was a real 911S, not did the previous owner. It is very hard to understand how one VIN number
would be just fine and correct, but the other one "looks funny."

At this point all I can think of is to check the 3rd VIN number and go from there.  Can you have the folks at Williilams
Crawford in Plymouth do that?  Do they have to take the dashboard out of the car?  I think that would help resolve
any mystery, but I would suggest you make sure the Williams Crawford people know what they are saying before
spending a lot of money on tearing apart the car.

As for the pan. all I can say is the car was completely apart, we looked closely at the pan and found no rust or any
reason to replace it. If we had, I would have done so. There were some minor dents that were repaired, but that was
all.

Please let me know what you discover.

Best Regards,

Philip Yanni


On 11/13/2017 9:15 AM, Tim Roper wrote:
   Philip

   I have just got back from my Porsche specialist who picked the car up from Southampton docks last week and who
   has now performed an initial inspection of the car.

   We need to have a chat, I suggest in the first instance by telephone.

   Could you let me have your phone number and a suitable time for me to call you please?

   Yours Sincerely

   Tim Roper

EXHIBIT C
PAGE 5 OF 10

Premier Panel Skills Ltd
5 Monkton Park, Farnham GU9 9PA

Tel:01252 718891 Fax: 01252 719655
Email: info@premierpanelskills.co.uk
Web: www.premierpanelskills.co.uk

# Premier Panel Skills Ltd
Porsche Centre
Recommended Body Repairer

## Estimate Print

Printed on 27 January 2018 by IANW

## Replace

| PARTS | Price | Part No. | | Price | Part No. |
|---|---|---|---|---|---|
| 1 x FUEL TANK SUPPORT | £59.48 | 9115011702 | 1 x BRACKET PRIME | £49.36 | 90150145720 |
| 1 x BRACKET | £51.10 | 90150145820 | 1 x CROSS PANEL | £334.23 | 91150121302 |

## Paint

| | |
|---|---|
| FRONT PANEL | FRONT FLOOR PANEL |
| LEFT A-PILLAR NEW PART PAINTING S1 | RIGHT A-PILLAR NEW PART PAINTING S1 |
| FRONT FLOOR PANEL REPAIR PAINT S3 | SPARE WHEEL WELL CPL REPAIR PAINT S3 |
| L/F WHEELHOUSE REPAIR PAINT S3 | R/F WHEELHOUSE REPAIR PAINT S3 |
| BULKHEAD REPAIR PAINT S3 | FLOOR PANEL CPL REPAIR PAINT S3 |
| FRONT PANEL REPAIR PAINT S4 | BONNET HINGE X 2 PAINT |
| PAINT PREPARATION S1 PARTS FITTED | TWO COAT PAINTING |

## Other

### LABOUR

| | |
|---|---|
| ADJUST FRONT VEHICLE INCLUDES: ADJUST CASTER, CAMBER AND STE | ADJUST REAR VEHICLE INCLUDES: ADJUST CASTER AND CAMBER |
| ADJUST FRONT AND REAR VEHICLE LEVEL WITH 4 WHEEL LOAD TRAINS | ASSEMBLE VEHICLE AFTER MOUNTING ON CHASSIS JIG (FRONT END ST |
| ASSEMBLE VEHICLE AFTER MOUNTING ON CHASSIS JIG (REAR END STR | BLEED BRAKE SYSTEM |
| SEAM SEALANT R&R / NEW PARTS | STONECHIP MATERIAL R&R / NEW PARTS |
| PANEL REPAIR PULLING PANELS | ALLOW CHECK & QUALITY CONTROL |
| CHECK AND ROAD TEST | Corrosion Prote TO PANELS |

### OTHER

| | |
|---|---|
| PORSCHE JIG BRACKETS | CORROSION PROTECTION MATERIALS |

## Materials

| PAINT/MATERIALS | SUNDRY PARTS (@ 2.0%) |
|---|---|

## Estimate Summary

| | Gross | Net |
|---|---|---|
| LABOUR | £14,238.00 | £14,238.00 |
| MATERIALS | £501.36 | £501.36 |
| OTHER | £409.17 | £409.17 |
| PARTS | £6,155.40 | £6,155.40 |
| TOTALS | £21,303.93 | £21,303.93 |
| | Plus VAT | £4,260.79 |
| | | £25,564.72 |

## Estimate Notes

All prices quoted are subject to VAT at the current rate. The above prices are valid for 3 Months. Whilst every care has been taken in the production of this estimate, any further damage found on stripping the vehicle will be estimated for seperately.
Please note that Part Numbers are to be used as a guide only.
**Unless otherwise stated, parts will be invoiced at the manufacturers list price, plus VAT.

Premier Panel Skills Ltd
5 Monkton Park, Farnham GU9 9PA

Tel:01252 718891 Fax: 01252 719655
Email: info@premierpanelskills.co.uk
Web: www.premierpanelskills.co.uk

*EXHIBIT C*

*PAGE 6 OF 10*

# Premier Panel Skills Ltd

Porsche Centre
Recommended Body Repairer

## Estimate Print

Printed on 27 January 2018 by IANW

| | | | | |
|---|---|---|---|---|
| Job Number | 12129 | | Engineer | |
| Claims Ref. | | | Estimator | IAN WALLIS |
| Estimate ID | IW100573 | | Make | PORSCHE |
| | | | Model | 911 S (LHD) COUPE |
| Contact Details | | | Trim | |
| | Contact Details Not Entered | | Registration | OEU562J |
| | | | Chassis No. | 911 13 000 23 |
| | | | Engine No. | |
| | | | VIN No. | 911 13 000 23 |
| | | | Radio Code | |
| | | | Mileage | 0 |
| | | | Creation Date | 27 January 2018 |

## Strip & Refit

REMOVE VEHICLE PARTS FOR CHASSIS JIG SETTING (WITH FRONT STR

R + R FRONT PANEL ATTACHED PARTS INCLUDES: REMOVE WHEELHOUSE

R + R BOTH F/INDICATOR LAMPS

RENEW LEFT FRONT WHEELHOUSE (COMPOSITE WORK)

R + R BRAKE BOOSTER

R + R CENTRE CONSOLE

R + R WIRE LINKAGE

RENEW LEFT HINGE PILLAR

R + R L/F SIDE PANEL TRIM

R + R L/A-PILLAR TRIM

R + R LEFT PEDAL PANEL

R + R OIL PIPES, ASSOCIATED WORK

R + R BOTH DOORS

R + R LEFT DOOR WHEATHERSTRIP INCLUDES: REMOVE SILL PANEL RA

R + R RIGHT DOOR TRIM INCLUDES: R + R PADDED MOULDING, WINDO

R + R RIGHT DOOR SPEAKER (DOOR TRIM REMOVED)

R + R RIGHT FRONT SEAT

R + R L/R SEAT CUSHION

REMOVE&REFIT W-WASHER BOTTLE

REMOVE VEHICLE PARTS FOR CHASSIS JIG SETTING (WITH REAR STRA

REFIT FRONT PANEL ATTACHED PARTS INCLUDES: REFIT REMOVED PAR

REMOVE/REFIT BONNET PANEL

RENEW RIGHT FRONT WHEELHOUSE (COMPOSITE WORK)

R + R INSTRUMENT PANEL COVER

R + R FRESH AIR HOUSING (TANK REMOVED)

R + R WIPER MOTOR (WIPER LINKAGE REMOVED)

RENEW RIGHT HINGE PILLAR

R + R R/F SIDE PANEL TRIM

R + R R/A-PILLAR TRIM

R + R REAR PANEL INCLUDES: R + R WHEELS, WHEELHOUSE SHIELD H

R + R WINDSCREEN

R + R LEFT DOOR TRIM INCLUDES: R + R PADDED MOULDING, WINDOW

R + R LEFT DOOR SPEAKER

R + R RIGHT DOOR WEATHERSTRIP INCLUDES: REMOVE SILL PANEL RA

R + R LEFT FRONT SEAT

R + R FLOOR TUNNEL CARPET ASS WORK

R + R R/R SEAT CUSHION

REMOVE&REFIT LOWER HEATER HOUSING

## Repair

REPAIR BULKHEAD

REPAIR FLOOR PANEL

## Replace

### LABOUR

FIT VEHICLE ON CHASSIS JIG INCLUDES: PREPARE CHASSIS JIG. FI

| PARTS | Price | Part No. | | Price | Part No. |
|---|---|---|---|---|---|
| 1 x CAR CARE KIT | £2.50 | SPECIALIST | 1 x SEAM SEALANT | £9.25 | REPLACE |
| 1 x STONECHIP MATERIAL | £43.50 | NEW PART | 2 x BRAKE FLUID | £90.20 | 00004320366 |
| 1 x ENGINE OIL | £100.00 | Renew | 1 x TOWING LUG | £70.46 | 90150153020 |
| 1 x TANK COMPARTME | £581.20 | 91150195500 | 1 x CROSS PANEL PR | £491.38 | 90150103121 |
| 1 x L/F WHEELHOUSE | £1,765.90 | 91150103411 | 1 x R/F WHEELHOUSE | £1,388.39 | 91150103309 |
| 1 x FUEL TANK SUPPORT | £246.27 | 91150111404 | 1 x FUEL TANK SUPPORT | £220.36 | 91150195300 |
| 1 x LEFT A-PILLAR | £355.09 | 993 502 | 1 x RIGHT A-PILLAR | £286.80 | 993 502 |
| 1 x EPA CHARGE | £5.00 | SPECIALIST | 1 x BRACKET | £4.93 | 90150154400 |

EXHIBIT D

PAGE 7 OF 10



## Inspection Report

Porsche 911

911 1300023

**Our experience and expertise.**
We specialize in Porsche maintenance, restoration and collision repairs here in the UK. Adrian Crawford started the business in 1991. We have in our restoration department Graham Kidd who for over 20 years has been involved exclusively in the restoration and repair of pre 1974 Porsche. Therefore we understand these cars in detail and have extensive expertise with the model and generation of the Porsche in question.

**Observations:**
The above Porsche was shipped by Mr Tim Roper to Southampton Docks and it was there whilst loading onto our truck that we first noticed signs of recent repair work inconsistent with a car that was allegedly fully restored a couple of years ago.

On the right hand chrome trim panel above the rocker panel was clear evidence of recent paintwork, whilst there was a discrepancy in the colour match between the right fender and door.

We were requested by Mr Roper to make an inspection of the car prior to registration, but we stopped when some serious issues became evident.

The car had clearly been completely disassembled some while ago and restored, this we could see by the extensive repaint and many refurbished or replaced components. This restoration is supported by the photographic rebuild evidence and extensive invoices.

We can see that at restoration time, the body must have been taken to a bare shell, as no original paint remained on the outside or the inside. All outer panels had been repainted, the trunk and engine bay had been repainted. The wheel wells and inside floor and under the floor had been re painted or refinished. There are photographs clearly showing a fully repainted shell without any fittings present.

**The collision damage.**
There is *no doubt* that this 911 has suffered very heavy collision damage to the front. This damage has affected the *structure* of the car. (the frame)

Williams Crawford Ltd, 911 Forge Lane, Moorlands Trading Estate, Saltash, Cornwall, PL12 6LX, UK
T. 01752 840307  M. 07766 558685 / 07973 616658  E. info@williamscrawford.co.uk  www.williamscrawford.co.uk

VAT No. GB 901565260

EXHIBIT D

PAGE 8 OF 10



Evidence of the collision is seen throughout the front and mid structure of the car.

The result is that the car has suffered such severe damage that even if a correct repair was possible the car would be of significant diminished value. No one wants a car with such major impact damage.

**The inspection revealed:**

1.  **Inner Fenders Damaged.** Lh and Rh inner fenders are buckled in many places by collision damage. These panels have been dressed out and covered with a thick textured finish often used to disguise damage. Specifically when looking along the top of the inner fenders to where the outer fender bolts it is clear to see these panels do not match up. They are badly buckled. Ordinarily one would expect these to have been replaced during accident repair.

2.  **Core bulkhead damaged.** i.Behind the fuel tank is the bulkhead panel (where the vin number is stamped). This is the very core of the bodyshell. It is very unusual to see buckles in this panel. Only after very heavy impact do you see damage like this. The panel has been dressed down and again heavy textured material has been applied to disguise the damage. Ordinarily this damage would be very difficult to repair, it is at the core of the body shell and damage here would normally result in a total insurance loss. ii. Relating to the above panel the so called 'smugglers box ' lid no longer fits the pressing due to aforementioned distortion.

3.  **Chassis frame rail Damaged.** Looking inside the smugglers box gives a view of the inner chassis (frame) rail and here quite clearly is a very large kink where this rail has been severely bent due to frontal impact.

4.  **Floorpan Damaged.** Moving to the interior of the car, lifting the front carpets you can clearly see that the floor under the drivers and passengers feet are significantly distorted where the impact has transferred to the floor.

5.  **Wheel tubs/floor Damaged.** From the underside more damage is visible. The back edge of the wheel tubs where they meet the floor on both right and left sides have been significantly move rearwards by the force of the impact, causing the floor to buckle near the seam and under the drivers heels.

6.  **Wheel tubs.** On the wheel arch tub you can see a distinct vertical crease where the arch has been forced backwards probably due to the wheels getting forced rearward into the wheel well.

Williams Crawford ltd, 9-11 Forge Lane, Moorlands Trading Estate, Saltash, Cornwall, PL12 6LX, UK
T. 01752 840307  M. 07768 865865  /  07973 616958  E. info@williamscrawford.co.uk  www.williamscrawford.co.uk

VAT No. GB 601555260

EXHIBIT D
PAGE 9 OF 10



7.   **Floorpan Damaged.** The underside of the floor pan shows quite clearly the distortion remaining.

8.   **Rocker panel Damaged.** Distortion in the rocker panel.

**Was it damaged before or after restoration?**
We believe it quite clearly has been damaged sometime after restoration:

1.   **New front end panels.** The front fenders, trunk lid, bumper, front panel, fuel tank support and fuel tank are all new. It is *unlikely* these may have been changed in restoration, because there is no evidence of prior corrosion repairs to this body shell in the areas that are normally the most vulnerable. One would anticipate that the original panels were unlikely to need replacement.

2.   **Newer and older paint / Colour variation.** It was noted that there were two different qualities of paint finish and two shades of yellow paint. The front end of the car exhibited a lower quality of finish, with paint evident on chrome trims and a variation to the colour of the rest of the car. We maintain this paint was done subsequent to the restoration (where the car was painted with no chrome trims fitted and therefore no 'overspray').

3.   **Paint on the interior trim.** Inside the car there was overspray in yellow on the front carpets, where the yellow paint from the trunk had 'escaped' through various gaps onto this trim. The restoration showed pictorial evidence of a car repainted when there was no trim present.

4.   **Paint on the interior trim.** On the left side the A post (door hinge area) has oversprayed onto the interior trim. There is evidence throughout the front end of this car that the paintwork on the front was applied *after* the car was restored.

5.   **Paint colour on the floor pan.** On the underside of the car further evidence exists of the yellow colour from the front end repair having drifted onto the black textured finish of the floor pan.

**How can the car appear aligned if its had such an impact?**

1.   **Structure.** It is entirely possible to use a hydraulic ram to pull and push the suspension attachment points into their original position. What cannot be hidden so easily is the creases/folds in the sheet metal as detailed above.

2.   **Panel gaps.** As above the car can be stretched and pulled into any position one wants to enable the panels to align to a reasonable standard. However the evidence remains.

Williams Crawford Ltd., 811 Forge Lane, Moorlands Trading Estate, Saltash, Cornwall, PL12 6LX UK
01752 840307 / M: 07708 355555 / 07973 618858 / Email: info@williamscrawford.co.uk   www.williamscrawford.co.uk

VAT No. GB 501565280



EXHIBIT D
PAGE 10 OF 10



**In summary:**
We are *beyond doubt* that this car has suffered a significant impact.

One of such severity as to render most vehicles as an insurance total loss. Although of nice appearance from the outside, the structure cannot hide the evidence of impact damage and the paintwork to the damaged area has spread onto various components that were not present when the car was painted during the original restoration.

Repairing the damage correctly is likely to be uneconomical and evidence will always remain.

The car would have a significantly diminished value.

The market for these cars values originality. A car with correctly repaired but extensive accident damage would be avoided and hence command a fraction of the price of an 'authentic' example.

A car with significant accident damage such as this albeit with new *outer panels* attached would be of very low value.

**Is repair possible?**
In our view, in practical terms it is not. The correct way to repair this 911 would have been to remove all damaged sheet metal, but that includes the bulkhead and forward floor section of the passenger compartment.

In layman's terms everything from underneath the seats must be cut away and replaced all the way to the front bumper. From the front bumper to the windscreen must be cust away. Then the bulkhead (firewall) must be cut away and replaced.

This extent of damage would usually require a replacement body shell. However, that too creates a diminished/blighted value and no body shells are available from Porsche.

Yours Sincerely



Adrian Crawford.
**Director Williams Crawford Ltd.**

Williams Crawford Ltd, 911 Forge Lane, Moorlands Trading Estate, Saltash, Cornwall, PL12 6LX UK
T: 01752 840307  M: 07768 555866 / 07973 616858  E: info@williamscrawford.co.uk  www.williamscrawford.co.uk

VAT No. GB 501565280

ORIGINAL

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY:     STATE BAR NO: | FOR COURT USE ONLY |
|---|---|
| NAME: Timothy Andrew Roper | |
| FIRM NAME: Timothy | |
| STREET ADDRESS: 1 Gardeners Close, Bradford on Tone, Taunton, Somerset | |
| CITY: UNITED KINGDOM     STATE: UK     ZIP CODE: TA4 1HT | |
| TELEPHONE NO.: 011 44 1823 461971     FAX NO.: | |
| E-MAIL ADDRESS: timroper2@gmail.com | |
| ATTORNEY FOR (name): | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SOUTHERN CALIFORNIA
    STREET ADDRESS: 333 West Broadway
    MAILING ADDRESS: 333 West Broadway 1
    CITY AND ZIP CODE: San Diego  CA 9210
    BRANCH NAME: Southern Claifornia

| Plaintiff/Petitioner: TIMOTHY ANDREW ROPER | CASE NUMBER: |
|---|---|
| Defendant/Respondent: PHILIP YANNI | 3:18-cv-00489-WQH-KSC |

| PROOF OF SERVICE—CIVIL | JUDICIAL OFFICER: |
|---|---|
| Check method of service *(only one):* | KSC |
| ☐ By Personal Service  ☒ By Mail  ☐ By Overnight Delivery | DEPARTMENT: |
| ☐ By Messenger Service  ☐ By Fax | DIVISION 3 |

*Do not use this form to show service of a summons and complaint or for electronic service.*
*See USE OF THIS FORM on page 3.*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:

    Advanced Attorney Services, Inc. 3500 Fifth Avenue, Suite 202 San Diego, CA 92103

3. ☐ The fax number from which I served the documents is *(complete if service was by fax):*

4. On *(date):* 26th March 2018       I served the following **documents** *(specify):*
    First Amended Complaint, plus Exhibits, plus copy of this Proof of Service

    ☐ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
    a. Name of person served: Philip Yanni

    b. ☒ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
       Business or residential address where person was served:
       14711 Sunrise Canyon Road, Poway, CA 92064

    c. ☐ *(Complete if service was by fax.)*
       Fax number where person was served:

    ☐ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*

    a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in Item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

| Form Approved for Optional Use | **PROOF OF SERVICE—CIVIL** | Code of Civil Procedure, §§ 1011, 1013, 1013a, |
|---|---|---|
| Judicial Council of California | **(Proof of Service)** | 2015.5; Cal. Rules of Court, rule 2.306 |
| POS-040 [Rev. February 1, 2017] | | www.courts.ca.gov |

POS-040

| CASE NAME: | CASE NUMBER: |
|---|---|
| | |

6. b. [X] **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one)*:

   (1) [ ] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   (2) [X] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):* San Diego, California

  c. [ ] **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

  d. [ ] **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

  e. [ ] **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 26th March 2018

Joyce Barwick
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

### DECLARATION OF MESSENGER

[ ] **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

  At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

  I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**